UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANGLE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BUFFALO GAMES, LLC,<br><br>    Defendant. | Case No. 22-cv-07024-JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO TRANSFER TO WESTERN DISTRICT OF NEW YORK**<br><br>**REDACTED** |

Tangle, Inc. ("Plaintiff") sues Buffalo Games, LLC ("Defendant") for (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) copyright infringement under 17 U.S.C. § 501(a); and (4) unfair competition under California Business & Professions Code § 17200. (Dkt. No. 43.)[1] Plaintiff filed an amended complaint ("FAC") after jurisdictional discovery to address the Court's previous dismissal for lack of personal jurisdiction. (*Id.*) Defendant moves to dismiss Plaintiff's FAC for lack of personal jurisdiction. (Dkt. No. 47-1.) After carefully considering the parties' submissions, and having the benefit of oral argument on August 31, 2023, the Court GRANTS the motion to dismiss for lack of personal jurisdiction and TRANSFERS the case to the Western District of New York.

## BACKGROUND

### A. Amended Complaint Allegations

Plaintiff is a California toy manufacturer and distributor headquartered in the Northern District of California. (Dkt. No. 43 ¶ 6.) Plaintiff owns a trademark for its "TANGLE" products

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

covered by United States Trademark Registration No. 1,779,055, which has been substantially and continuously promoted since 1993. (Dkt. No. 43 at ¶ 1.) Plaintiff also owns all exclusive rights in various copyrights for TANGLE products. (*Id.*) Defendant is a New York limited liability corporation that produces games and puzzles with its principal place of business in Buffalo, New York. (Dkt. No. 43 at ¶ 11.)

As in the original complaint, Plaintiff alleges Defendant sells its "Chuckle & Roar Sensory Fidget Box 10-pack,"—which includes a "Twist & Tangle" toy (the "Infringing Toy")—at Target's brick-and-mortar locations in California. (Dkt. No. 43 at ¶¶ 21, 29.) Plaintiff asserts Defendant also offers the Infringing Toy to California consumers online through www.target.com. (*Id.* at ¶ 12.) Plaintiff states the Infringing Toy appears identical to its TANGLE toys but is constructed with "substandard, stiff material, . . . making [it] much less flexible." (*Id.* at ¶ 2.) Plaintiff sent a cease-and-desist letter, demanding Defendant stop sales of the Infringing Toy, recall all such products, and cancel any outstanding orders. (Dkt. No. 20-1 at 59-60.) Plaintiff submits screenshots indicating—at time of filing—the Infringing Toy was available online at www.target.com and in several brick-and-mortar Target retailers throughout this district. (Dkt. No. 4 at 7.)

Plaintiff's FAC adds allegations related to Defendant's shipment of product to Long Beach, California, alleging:

> Defendant advertises, markets, and sells the Infringing Products at Target retail stores in California, throughout the United States of America (the "United States"), and online at www.target.com under Defendant's "Chuckle & Roar" brand name. In addition to the foregoing, Defendant has engaged Target to import Defendant's Infringing Products into the United States from the People's Republic of China through primarily the Port of Long Beach, a foreign trade zone having significant benefits for international businesses bringing goods into the United States. The Port of Long Beach is located in Long Beach, California. Although Defendant directs some shipments of its Infringing Products to Defendant in New York, for years, Defendant has engaged only Target to import the majority of its Infringing Products, and sometimes ***all*** of its then manufactured Infringing Products, into the United States through the Port of Long Beach. Further, Defendant uses the Port of Long Beach in Southern California as the hub from which all of its Infringing Products are then sold in any one of Target's about 273 stores the State of California, sent to distribution centers in California for distribution throughout

2

the state or other states, or sent to other Target distribution centers throughout the United States.

(Dkt. No. 43 ¶ 12.) The FAC also alleges "Defendant directed Target to remove units of the Infringing Product from Target's shelves and website in September 2022. Target complied with this instruction, even though there remained unsold inventory of the Infringing Product in Target's warehouses." (Id. ¶ 15.) "Furthermore, at all times material hereto, Defendant had the right and authority to control Target's pricing of the Infringing Products as they were sold in Targets' stores." (Id. ¶ 16.)

### B. Procedural History

After Plaintiff brought the initial action, Defendant moved to dismiss for lack of personal jurisdiction or, alternatively, to transfer the case to the Western District of New York. (Dkt. No. 18.) This Court denied the request to transfer and granted the motion to dismiss for lack of personal jurisdiction with leave to amend. (Dkt. No. 30.) The Court granted jurisdictional discovery. (*Id.*) Now, Plaintiff has filed the FAC and Defendant brings a renewed motion to dismiss for lack of personal jurisdiction. (Dkt. Nos. 43, 47.)

## DISCUSSION

### A. Legal Standard

Plaintiff "bears the burden" of establishing personal jurisdiction exists. *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). The Court may consider declarations and other evidence outside the pleadings to determine whether it has personal jurisdiction. *See Boon Global*, 923 F.3d at 650. "[U]ncontroverted allegations in plaintiff's complaint must be taken as true," but courts "may not assume the truth of allegations in a pleading which are controverted by affidavit." *Mavrix Photo,*

3

*Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up). Any "factual disputes" must be "resolve[d] . . . in the plaintiff's favor." *Id.*

When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long arm statute is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10; *Mavrix*, 647 F.3d at 1223.

Courts recognize two forms of personal jurisdiction, general and specific. *Bristol-Myers Squibb Co. v. Super. Court of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). General jurisdiction over a nonresident corporation "is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2006) (cleaned up); *see Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) ("[T]he standard for general jurisdiction is high" and "a defendant must not only step through the door, it must also [sit] down and [make] itself at home.") (quotations and citations omitted). By contrast, specific jurisdiction requires a nonresident defendant's "suit-related conduct [to] create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264; *see Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over claims unrelated to those sales.").

Plaintiff does not contend general jurisdiction exists; indeed, the record is undisputed Defendant has no physical locations, facilities, or personnel in California. (Dkt. No. 47-1 at 7.) Defendant is not licensed to conduct business in California, owns no property or assets in California, and neither owes nor pays income taxes in California. (*Id.*) None of Defendant's officers, directors, or shareholders is domiciled in California, nor is any California citizens. (*Id.*)

4

The Court thus must analyze whether Plaintiff has made a prima face showing of specific jurisdiction.

### B. Specific Jurisdiction

The Ninth Circuit applies a three-part test to determine if the exercise of specific personal jurisdiction over a nonresident is appropriate: (1) the defendant must purposefully direct its activities toward the forum or purposefully avail itself of the privileges of conducting activities in the forum; (2) the plaintiff's claim must arise out of or relate to those activities; and (3) the assertion of personal jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802. It is Plaintiff's burden to plead allegations that satisfy the first two prongs, whereupon the burden shifts to the defendant to show why the exercise of specific personal jurisdiction would not be reasonable under prong three. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

#### 1. Purposeful Direction

The first element requires Plaintiff establish Defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Id.* "A purposeful availment analysis is most often used in suits sounding in contract" while a purposeful direction analysis "is most often used in suits sounding in tort." *Id.* Plaintiff alleges copyright and trademark infringement claims, which sound in tort, so the Court must decide whether Plaintiff has made a prima facie of showing Defendant purposefully directed activities at California.[2] *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).

Plaintiff has the burden of establishing purposeful direction following the three-part test in *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). At this stage, Plaintiff must plausibly allege (1) Defendant committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm Defendant knows is likely to be suffered in the forum state. *Id.* "Failing to plead any one of these

---

[2] If the exercise of jurisdiction over these claims was proper, the Court could assert "pendent personal jurisdiction" over Plaintiff's additional claim for unfair competition because it arises out of a common nucleus of operative fact. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).

elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010)).

### 1. Intentional Act

An intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co. v. A-Z Sporting Goods*, Inc., 704 F.3d 668, 674 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th Cir. 2017). In the trademark context, this includes selling an allegedly infringing product, even if such sales occur outside the forum. *Wash. Shoe Co.*, 704 F.3d at 674; *see also Int'l Aero Products, LLC v. Aero Advanced Paint Tech., Inc.*, 325 F. Supp. 3d 1078, 1084-85 (C.D. Cal. 2018) (concluding plaintiff's allegations that a nonresident defendant's infringement within the forum state was "knowing, willful, and deliberate" satisfied the intentionality prong).

Plaintiff alleges "Defendant's infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyrights." (Dkt. No. 43 at ¶ 55.) Plaintiff also alleges "Defendant knowingly and intentionally traded upon Plaintiff's reputation and goodwill" by offering products in connection with the TANGLE trademark. (Id. at ¶ 65.) These factual allegations support an inference of Defendant's intent to perform "an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806; *see also Chanel Inc. v. Yang*, No. C 12–4428 PJH, 2013 WL 5755217, at *7 (N.D. Cal. 2013) (concluding selling allegedly infringing products on a website was an intentional act). So, the first prong of the *Calder* purposeful direction test is satisfied.

### 2. Express Aiming

Plaintiff must also make a prima facie showing Defendant's acts were expressly aimed at the forum state—California—which requires "something more" than "a foreign act with foreseeable effects in the forum state." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (cleaned up). An action is expressly aimed when "the 'defendant *himself*' creates [contacts] with the forum State" rather than the plaintiff or persons who reside there. *Walden*, 571

6

U.S. at 284-85 (quoting *Burger King*, 471 U.S. at 475). Due process requires a defendant "be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475).

After jurisdictional discovery, Plaintiff advances three new theories arguing Defendants' own actions connect them to the forum state: (1) Defendant "repeatedly made 'physical entry' into California" through Defendant's shipment of goods to Long Beach; (2) the nationwide distribution relationship between Defendant and Target constitutes intentionally reaching out to California because Defendant knew of California's disproportionality large market; (3) "Target was [Defendant's] agent" thus the contacts Target made with California are imputable to Defendant. (Dkt. No. 56 at 8, 13.)

### a. Physical Entry through the Long Beach Port of Entry

Plaintiff's first theory relies heavily on *Walden* to argue Defendant "physically entered California by repeatedly loading shipping containers full of 'goods'—the Infringing Products—and sending them straight to California." (Dkt. No. 56 at 9.) *Walden* states "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." 571 U.S. at 285 (cleaned up). Plaintiff alleges Defendant sends products from China to the Port of Long Beach in California and therefore Defendant made physical entry into California. ███████████████████████████████████████████████████████████ According to Plaintiff, these invoices indicate Defendant was actively shipping the Infringing Products to the "hub" of Long Beach, then Target sent these products to California stores or distribution centers. (Dkt. No. 55-1 at 9). ███████████████████████████████████████████████████████████

---

[3] *See Rojas v. Hamm*, No. 18-CV-01779-WHO, 2019 WL 3779706, at *4 n.6 (N.D. Cal. Aug. 12, 2019) (explaining the meaning of FOB).

7

1
2
3 ▮▮▮▮▮ While we must "resolve factual
4 disputes in Plaintiff's favor," the invoices upon which Plaintiff relies do not create a factual
5 dispute as those invoices merely confirm the testimony of Mr. Predko—Target assumed
6 ownership in the goods in Ningbo. Plaintiff has not identified any evidence showing otherwise. As
7 Plaintiff's allegation is contradicted by undisputed record evidence, it cannot support the exercise
8 of personal jurisdiction.
9     This case is analogous to *Rojas v. Hamm*, No. 18-CV-01779-WHO, 2019 WL 3779706, at
10 *4 (N.D. Cal. Aug. 12, 2019). In *Rojas*, the plaintiffs argued the defendant should be subject to
11 personal jurisdiction in California because the defendant "shipped products directly to California."
12 *Rojas*, 2019 WL 3779706 at *4. However, the defendant presented evidence demonstrating "it
13 delivers these products to its customers in Germany and only arranges for shipment at the
14 direction of its customers." *Id.* Much like this case, the defendant pointed to the fact that "risk of
15 loss transferred" to another company in Germany as evidence the defendant did not purposefully
16 direct itself to California. *Id.* The court concluded that while "the mere existence of a 'free on
17 board' designation is not enough to shield a nonresident defendant from what would otherwise be
18 a proper exercise of jurisdiction," a FOB designation of a foreign location supports a defendant's
19 contention it did not purposefully direct itself to the forum state. *Rojas*, 2019 WL 3779706, at *4
20 (citing *Taubler v. Giraud*, 655 F.2d 991, 994–96 (9th Cir. 1981)).
21     In this case, like *Rojas*, the FOB designation is not the only piece of evidence suggesting
22 Defendant did not purposefully direct itself to California. As Defendant has emphasized, it does
23 not sell any products directly to California consumers and does not have any physical presence in
24 California. (Dkt. 61-3 at 11). Further, Defendant did not "exercise[] control over distribution" of
25 those goods. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 n.4, 1094-95 (9th
26 Cir. 2023) (finding personal jurisdiction in a case where "Defendants retain[ed] ownership of the
27 goods" until those goods reached customers in the forum state and Defendants "created and
28 maintained a distribution network that reached the relevant forum").

Defendant's attempt to distinguish *Rojas* on the grounds there the defendant shipped only 1% of its products to the forum state whereas here the evidence is that all, or nearly all, of the allegedly infringing products are shipped to the Port of Long Beach is unpersuasive. While the 1% number was one reason the district court gave for declining to find jurisdiction, the court separately addressed whether shipments directly to the forum could establish personal jurisdiction if title transferred to the buyer abroad. 2019 WL 3779706 at *4-5. And, Plaintiff has not cited any case—from the Ninth Circuit or otherwise—that supports finding express aiming based on shipments of any quantity when title transferred abroad from the defendant to the buyer. Plaintiff has not met its burden of showing this conduct satisfies the express aiming prong.

    **b.**  **Defendant's Nationwide Distribution Relationship with Target**

Plaintiff next argues Defendant intentionally reached out to California through its nationwide distribution relationship with Target because Defendant knew California was a disproportionately large market. Plaintiff alleges



The allegations of a nationwide distribution relationship with Target is insufficient to meet the express aiming requirement. See *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("[W]e must look to the defendant's 'own contacts' with the forum." (quoting *Walden*, 571 U.S. at 287)); (*see* Dkt. No. 30 at 7.) None of Plaintiff's allegations

---

[4] Plaintiff cites to the declaration of Jeremy Ballaro to support this allegation. (Dkt. No. 47-2 at ¶ 16.) However, the allegation is not supported by Ballaro's declaration. Ballaro states "Other than its obligation to transfer ownership of its products to Target in Ningbo, China per Buffalo Games' agreement with Target entered into through Target's portal system and its decisions over pre-determined price and removal of its products to be sold by Target, Buffalo Games does not control or supervise in any way how Target sells, displays, distributes or transports the products within the United States." (*Id.*) This statement does not show any "coordinated distribution" as Plaintiff alleges.

establish Defendant itself sold products to customers in the forum state. Defendant did not sell any of the allegedly infringing toys directly to anyone in California. The uncontradicted allegations and the record evidence supports an inference only that Target, a third-party retailer, expressly aimed products at consumers in California. That California is a large share of Target's domestic market does not support a prima facie showing of personal jurisdiction over Defendant, as the Court previously ruled. (Dkt. No. 30 at 7.)

### c.   Agency Theory

Finally, Plaintiff asserts Defendant's "agency relationship with Target" renders Defendant subject to this Court's Jurisdiction. (Dkt. No. 55-1 at 13.) While such an "[a]gency relationship[] . . . may be relevant to the existence of specific jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014),[5] Plaintiffs have failed to establish such an agency relationship existed between Defendant and Target. "An agent is one who acts on the principal's behalf and subject to the principal's control." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010). "[G]enerally, a purchaser is not acting on behalf of a supplier in a distribution relationship in which goods are purchased from the supplier for resale." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1172-73 (9th Cir.), *cert. denied sub nom. Ratha v. Phatthana Seafood Co.*, 143 S. Ct. 491 (2022) (cleaned up)).

The FAC alleges Defendant exercised "control over Target" because Defendant "directed Target to remove units of the Infringing Product from Target's shelves and website" after this case was filed and Defendant had the right to decide the price of its products sold by Target. (Dkt. No. 43 at ¶¶ 15-16.) Plaintiff argues these allegations demonstrate Defendant "exercised control over the two most important aspects of merchandise transactions—price and disposition of the

---

[5] *Daimler AG v. Bauman* did not expressly hold an agency relationship could be the basis for specific personal jurisdiction but left open that possibility. In *Williams v. Yamaha Motor Co.*, the Ninth Circuit recognized whether an agency relationship could establish specific jurisdiction remained unsettled. 851 F.3d 1015, 1024 (9th Cir. 2017). In *Williams*, the Ninth Circuit analyzed whether the defendant had an agency relationship after "[a]ssuming . . . some standard of agency continues to be relevant to the existence of specific jurisdiction." *Id.* The Ninth Circuit found no such agency relationship, and thus did not decide whether agency is sufficient to establish specific jurisdiction. *Id.* Here, this Court engages in the same analysis while assuming agency could be relevant to specific personal jurisdiction.

property." (Dkt. No. 56 at 16.) In support of these assertions, Plaintiff cites Defendant's Declaration in Support of its Motion to Dismiss, where Defendant states, "Other than its obligation to transfer ownership of its products to Target in . . . China . . . and its decisions over pre-determined price and removal of its products to be sold by Target, Buffalo Games does not control or supervise in any way how Target sells, displays, distributes or transports the products . . . ." (Dkt Nos. 56 at 16, 47-2 at ¶ 16. Plaintiff has cited no evidence Defendant directed Target to sell the Infringing Products in California. *See Daimler* AG, 571 U.S. at 135 n. 13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."). Further, Plaintiff has not alleged Target was acting for the benefit of Defendant, rather than for Target's own benefit. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232–33 (9th Cir. 2013). Thus, Plaintiff failed to establish Defendant exercised the requisite "control" over Target's actions to establish an agency relationship sufficient for the exercise of specific personal jurisdiction.

Plaintiff has not adequately demonstrated Defendant purposefully directed its activities at residents of the forum and personal jurisdiction is lacking. Because Plaintiff has failed to satisfy the second prong of the *Calder* purposeful direction test, the Court need not reach the third prong regarding foreseeability of harm. *Schwarzenegger*, 374 F.3d at 807 (ending its application of the *Calder* test after finding the plaintiff had failed to make out "a prima facie case that [the defendant] expressly aimed its acts at California").

## CONCLUSION

For the reasons stated above, the Court lacks personal jurisdiction over the Defendant. Under 28 U.S.C. § 1406(a), the Court may transfer this case to another district. Both parties agree the Western District of New York has personal jurisdiction over Defendant, as Defendant's principal place of business is within the district. Accordingly, in the interests of justice, the Court transfers this case to the Western District of New York.

The administrative motions to seal (Dkt. Nos. 55, 61) are GRANTED as they seek to seal confidential business information.

This Order disposes of Docket Nos. 47, 55, 61.

**IT IS SO ORDERED.**

Dated: September 1, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge