UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TANGLE, INC.,

                Plaintiff,

       v.

BUFFALO GAMES, LLC d/b/a CHUCKLE &
ROAR,

             Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00924 EAW

## INTRODUCTION

Plaintiff Tangle, Inc. ("Plaintiff") owns a registered trademark and multiple copyrights related to its TANGLE products, which are manipulable toys made up of segments of geometric shapes. It has sued defendant Buffalo Games, LLC d/b/a Chuckle & Roar ("Defendant") for trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), copyright infringement in violation of 17 U.S.C. §§ 101 *et seq.*, and unfair competition in violation of § 17200 of the California Business and Professions Code (the "California UCL"). (Dkt. 79).

Defendant has moved to dismiss Plaintiff's copyright infringement and unfair competition claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 80). For the reasons below, the Court grants Defendant's motion as to the copyright infringement

- 1 -

claim and grants in part and denies in part Defendant's motion as to the unfair competition claim.

## BACKGROUND

### I.   Factual Background

These facts are taken from the second amended complaint, the operative pleading. As is required at this stage of the proceedings, Plaintiff's well-pleaded factual allegations are treated as true.

Plaintiff is a toy manufacturer and distributor, and is "credited for many breakthroughs that have occurred in the toy industry, including its TANGLE product." (Dkt. 79 at ¶ 7).  Plaintiff holds copyrights for nine kinetic sculptures that it claims Defendant has infringed.  (*See id*. at ¶ 1; Dkt. 79-2).  Each kinetic sculpture consists of 17 or 18 interlocking, curved segments.

The relevant copyright registrations are U.S. Copyright Office Registration Nos. VA 120-368, VA 1-232-933, VA 1-271-045, VAu 35-392, VAu 35-391, VAu 35-390, VAu 35-389, VAu 35-388, and VAu 35-387.  (Dkt. 79 at ¶ 1; *see* Dkt. 79-2).  Registration No. VA 120-368 was effective November 2, 1982, and is for a work entitled "Coiled Tangle (17 sections)."  (Dkt. 79-2 at 3).  Registration No. VA 1-232-933 was effective April 9, 2003, and is for a work entitled "Zawitz Tangle Ornamental (Flat-sided) kinetic sculpture." (*Id*. at 10).  Registration No. VA 1-271-045 was effective July 20, 2004, and is for a work entitled "Tangle Therapy Kinetic Sculpture."  (*Id*.).  Registration No. VAu 35-387 is for a work entitled "Zawitz Tangle Ornamental Sculpture No. I."  (*Id*. at 15-19).  Registration

No. VAu 35-388 is for a work entitled "Zawitz Tangle Ornamental Sculpture No. V."  (*Id*. at 20-24).  Registration No. VAu 35-389 is for a work entitled "Zawitz Tangle Ornamental Sculpture No. III."  (*Id*. at 25-29).  Registration No. VAu 35-390 is for a work entitled "Zawitz Tangle Ornamental Sculpture No. II."  (*Id*. at 30-34).  Registration No. VAu 35-391 is for a work entitled "Zawitz Tangle Ornamental Sculpture No. VI."  (*Id*. at 35-43).  Registration No. VAu 35-392 is for a work entitled "Zawitz Tangle Ornamental Sculpture No. IV."  (*Id*. at 44-48).

Defendant sells toys called "Twist & Tangle," which "appear identical to Plaintiff's genuine TANGLE products," but are "made with a substandard, stiff material, and are engineered to inexact standards making them much less flexible." (Dkt. 79 at ¶ 2).  Plaintiff asserts that Defendant's "Twist & Tangle" products embody Plaintiff's copyrights.  (*Id*.).

Plaintiff is also the owner of the trademark TANGLE, which is protected by U.S. Trademark Registration No. 1779055.  (*Id*. at ¶ 1).  Plaintiff alleges that Defendant has engaged in unfair competition under the California UCL by "knowingly and intentionally trad[ing] upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's TANGLE Trademark and/or TANGLE Copyright Registrations."  (*Id*. at ¶ 57).

## II.   **Procedural Background**

Plaintiff originally commenced this action in the United States District Court for the Northern District of California.  (Dkt. 1).  The matter was transferred to this Court on September 5, 2023 (Dkt. 68), and the parties subsequently stipulated to the filing of the

second amended complaint (Dkt. 78), which was filed on October 31, 2023 (Dkt. 79).

Defendant then filed the instant motion to dismiss (Dkt. 80), which Plaintiff opposed (Dkt.

83).  Plaintiff completed the briefing by filing a reply on February 1, 2024.  (Dkt. 84).

## DISCUSSION

## I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the

complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court

should consider the motion by "accepting all factual allegations as true and drawing all

reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund

v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant

must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542,

546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in

original) (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

### A.   Copyright Infringement

"To maintain an action for infringement, a plaintiff must establish (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quotation omitted).  As to the second of these elements, the plaintiff "must demonstrate that (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (quotation omitted and emphasis in original).

Defendant argues that Plaintiff has not plausibly alleged substantial similarity, for several reasons.  Before assessing this argument, it is necessary to set forth the precise allegations that Plaintiff makes in the second amended complaint.  Plaintiff does not allege that Defendant directly copied any of the identified registered works.  Instead, Plaintiff alleges that its TANGLE products incorporate its registered copyrights (*see* Dkt. 79 at ¶ 44 ("Defendant had access to the TANGLE products incorporating Plaintiff's registered

copyrights before Defendant listed its product for sale[.]"))[1], and that Defendant directly copied the TANGLE products, (*see id.* at ¶ 45 ("Upon information and belief, Defendant has directly copied Plaintiff's copyrights <u>for the TANGLE products.</u>" (emphasis added)); *see also id*. at ¶ 22 ("The 'Twist & Tangle' toy is a cheap imitation of Plaintiff's genuine TANGLE Products, which Defendant deliberately copied in manufacturing the 'Twist & Tangle' toy.")).  Plaintiff also compares what it alleges is an "exemplary picture of [its] copyright" to an exemplar of Defendant's product.  (*Id*. at ¶ 45).  But the alleged exemplary picture is not a picture of any of Plaintiff's registered works, but instead of one of Plaintiff's TANGLE products into which its registered copyrights are allegedly incorporated.  In sum, Plaintiff's infringement theory is that it incorporated the aspects of the registered works protected by copyright into the TANGLE products and Defendant copied those protectible elements from the TANGLE products.

Based on the nature of Plaintiff's allegations, the Court agrees with Defendant that Plaintiff has not plausibly alleged substantial similarity between Defendant's products and Plaintiff's registered works.  "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same."  *Peter F. Gaito*

---

[1]      "Since direct evidence of copying is rarely possible, copying is generally established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works."  *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993).  Plaintiff does not allege that Defendant had access to the registered works, but instead that Defendant had access to the TANGLE products.

*Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 66 (2d Cir. 2010) (quotation and alteration omitted).  In applying this "ordinary observer" test, the Court asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id*. (quotation omitted).  But when a work contains both protectible and unprotectible elements, the Court's "analysis must be more discerning," and it "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar[.]" *Id*.  (quotations omitted); *see also Laureyssens v. Idea Grp., Inc*., 964 F.2d 131, 141 (2d Cir. 1992) ("[W]here a design contains both protectible and unprotectible elements, we have held that the observer's inspection must be more discerning, ignoring those aspects of a work that are unprotectible in making the comparison." (quotation omitted)).  Unprotectible elements of a registered work include "colors, letters, descriptive facts, and the catalogue of standard geometric forms[.]" *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003).

Plaintiff does not dispute that its registered works contain unprotectable elements, acknowledging that they can be "decomposed into geometric parts[.]"  (Dkt. 83 at 10).[2] Instead, Plaintiff argues that its registered works are "a 'non-mechanical' selection and 'adaptation' of individual elements that constitutes creative expression."  (*Id*. (quoting

---

[2]     Plaintiff does state in a footnote that it "does not concede that the 'more discerning' standard applies." (Dkt. 83 at 11 n.1).  Plaintiff does not explain that statement and it is unclear to the Court what basis it could have.  As noted, Plaintiff does not dispute that its registered works can be broken down into geometric shapes, a classic example of an unprotectable element.

*Tufenkian*, 338 F.3d at 136)).  A "non-mechanical adaptation of individually unprotectible elements from the public domain" may constitute protectible expression.  *Tufenkian*, 338 F.3d at 136.  But the protection given in such circumstances is "thin, . . . the scope of the copyright is limited to the particular selection or arrangement, and a subsequent author remains free to use the public domain elements to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement[.]"  *Id.* (quotations and original alterations omitted).

Based on this law and because of the nature of Plaintiff's copyright infringement claims, Plaintiff could prevail only by demonstrating that: (1) it incorporated the particular selection and arrangement of the individually unprotectable elements of its registered works into the TANGLE products; and (2) Defendant copied that same selection and arrangement in its products.  But Plaintiff has not plausibly alleged that this is the case.  The second amended complaint does not identify what allegedly protectible aspects of the registered works were incorporated into the TANGLE products.  Nor can this information be reasonably inferred from the included photographs of the TANGLE products, which vary in significant ways.  (*See* Dkt. 79 at ¶ 14).  Absent this information, no reasonable factfinder could conclude based on the allegations in the second amended complaint—even with all reasonable inferences in Plaintiff's favor—that Defendant copied the protectible elements of the registered works.[3]

---

[3]     In its response to Defendant's motion to dismiss, Plaintiff describes the TANGLE products as "derivatives" of the registered works.  (Dkt. 83 at 9).  A "derivative work" is a defined term in copyright law, meaning "a work based upon one or more preexisting works,

Plaintiff attempts to remedy this deficiency in its response to Defendant's motion to dismiss, describing the "distinguishing characteristics" of its registered works as follows: "each of the segments is a one-quarter segment of a donut-shaped torus, where each segment has a uniform 90 degrees arc, each segment is identically sized, each has a recognizable proportion of tubular radius to length, and each can be rotated 360 degrees[.]" (Dkt. 83 at 9). As an initial matter, "[a] complaint does not include allegations raised for the first time in opposition to a motion to dismiss and such allegations do not automatically amend the complaint." *Lee v. Saul*, No. 19-CV-6553 (PGG)(SN), 2020 WL 7029264, at *2 (S.D.N.Y. Aug. 31, 2020), *adopted as modified*, 2020 WL 5836513 (S.D.N.Y. Sept. 30, 2020). Plaintiff has not included these allegations in the second amended complaint, nor can it be reasonably inferred from the photographs of the TANGLE products that these allegedly distinctive characteristics of the registered works have been incorporated therein. For example, two of the pictured TANGLE products appear to have globular segments of unequal size incorporated into them. (*See* Dkt. 79 at ¶ 14). And nothing in the pictures shows that the segments of the TANGLE products can be rotated 360 degrees, nor is this fact alleged in the second amended complaint.

---

such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Even assuming Plaintiff is asserting that the TANGLE products satisfy the statutory definition of a derivative work, "[t]he weight of authority" holds "that an unregistered derivative work is protected from infringement only to the extent to which that unregistered work has reproduced protected material from the underlying registered work." *Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239, 248 (S.D.N.Y. 2013).

Even assuming for the sake of argument that these allegedly distinctive characteristics could be discerned from the second amended complaint, Plaintiff has not plausibly alleged that they are protectible elements of the registered works that have been copied by Defendant. A "one-quarter segment of a donut-shaped torus" with a 90-degree arch is a geometric shape that is not protected by copyright law. *See Tangle Inc. v. Aritzia, Inc.*, 698 F. Supp. 3d 1180, 1187 (N.D. Cal. 2023) ("[C]opyright law would not protect 90-degree curved tubular pieces or sculptures made of interlocking pieces.").[4]

The ability to rotate the pieces of a toy is functional, and thus not protectible. *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 424 (2017) ("[A]n artistic feature of the design of a useful article is eligible for copyright protection if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work either on its own or in some other medium if imagined separately from the useful article."); *Lego A/S v. Best-Lock Const. Toys, Inc.,* 874 F. Supp. 2d 75, 98 (D. Conn. 2012) ("[C]ourts in this circuit . . . define the 'functional' aspects of a toy implicitly as those aspects that involve movement or attachment.").

---

[4]      *Aritzia* has been appealed and is currently pending before the Ninth Circuit, with oral argument scheduled for October of this year. Plaintiff suggests that the Court should defer its decision on this aspect of Defendant's motion to dismiss until the Ninth Circuit issues its decision. (*See* Dkt. 83 at 21-24). But the Court does not rely on the *Aritzia* case and has cited it only for its persuasive value. Moreover, even if the Ninth Circuit were to reverse the *Aritzia* decision, its decision would not be binding on this Court, which has reached its determination based on its own understanding of the relevant law.

Finally, the second amended complaint does not allege that the segments of Defendant's product are all identically sized.  To the contrary, in the photographs of Defendant's product included in the second amended complaint, the segments visually appear to be of different sizes.  While this may result from the angle at which the product was photographed, there is nothing in the second amended complaint from which the alleged identical size of the segments can be reasonably inferred.  It is thus not plausibly alleged that Defendant copied this aspect of Plaintiff's registered works.[5]

"A [copyright] plaintiff is required to allege that the defendant copied her protected expression." *Lambertini v. Fain*, No. 12-CV-3964 DRH ARL, 2014 WL 4659266, at *4 (E.D.N.Y. Sept. 17, 2014).  Plaintiff has not met that burden here and its copyright infringement claim must be dismissed.

### B.    Unfair Competition

The Court next considers Defendant's request to dismiss Plaintiff's unfair competition claim.  The California UCL "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014).  "Each of the three UCL prongs provides a 'separate and distinct theory of liability' and an independent basis for relief." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019) (quoting *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010)).  Defendant argues that: Plaintiff's claims under the unlawful

---

[5]     To the extent that it is necessary to the functionality of the toy that the segments be the same length, this design element is also not protectible.

prong are preempted by federal law to the extent that they are based on alleged copyright infringement; Plaintiff has not alleged sufficient harm to competition under the unfairness prong; and Plaintiff lacks standing under the fraud prong.

As to the unlawful prong, Defendant concedes that this aspect of Plaintiff's claim under the UCL is only based in part on alleged copyright infringement.  (*See* Dkt. 80-1 at 20).  Indeed, in its response, Plaintiff disclaims any reliance on copyright with respect to its unfair competition claim.  (*See* Dkt. 83 at 27 ("None of the . . . [unfair competition] allegations relies on copyright.  They do have significant overlap with Tangle's unchallenged trademark claims, but there is no field preemption for trademark claims.")).  Defendant does not argue that Plaintiff's claim under this prong of the California UCL is otherwise deficient, nor even address the other bases asserted in the second amended complaint.  Defendant has thus not demonstrated that Plaintiff's unfair competition claim should be dismissed to the extent it is asserted under the unlawful prong of the California UCL.

Turning to the unfairness prong, the California Supreme Court has held that an "unfair" business practice is "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Under *Cel-Tech*, "a violation of the unfair prong may be based on conduct that significantly threatens or harms competition, regardless of whether it represents an

actual or incipient violation of an antitrust law; it may also be based on a violation of the policy or spirit of one of those laws." *PeopleBrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120 EMC, 2013 WL 843032, at *4 (N.D. Cal. Mar. 6, 2013) (quotation omitted). But "injury to a competitor is not equivalent to injury to competition, and standing alone does not establish an unfair act under the UCL." *Netlist, Inc. v. Diablo Techs., Inc.*, No. 13-CV-5962 YGR, 2015 WL 1887261, at *3 (N.D. Cal. Apr. 24, 2015) (quotation omitted), *aff'd*, 667 F. App'x 774 (Fed. Cir. 2016).

Plaintiff does not argue that it has alleged harm to competition, but cites to a case from an intermediate California appellate court, *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544 (2013), which it claims stands for the proposition that it need only allege "wrongful conduct in commercial enterprises which resulted in business loss to another, ordinarily by the use of unfair means in drawing away customers from a competitor," (Dkt. 83 at 28 (quoting *Law Offices*, 214 Cal. App. 4th at 561)). The *Law Offices* case is inapposite, because the court in that case was "concerned . . . with business acts or practices that may be <u>unlawful</u>, stemming from the unauthorized practice of law." 214 Cal. App. 4th at 553 (emphasis added). And the quoted language from *Law Offices* describes "the original purpose of the unfair competition laws," *id*. at 561, not the elements of a claim under the unfairness prong.

The Court agrees with Defendant that Plaintiff has not stated a claim under the unfairness prong of the California UCL, because it has not alleged injury to competition as

opposed to injury to a competitor.  The Court grants this aspect of Defendant's motion to dismiss.

Finally, the Court turns to Plaintiff's claim under the fraud prong of the California UCL.  Defendant argues that Plaintiff lacks standing as to this claim, because it "has failed to allege either a specific fraudulent misrepresentation or its reliance on that misrepresentation."  (Dkt. 80-1 at 19).

To have statutory standing to bring a claim under the UCL, a plaintiff must "demonstrate that she suffered an economic injury 'as a result of' a business's unlawful or unfair business practices."  *Groff v. Keurig Green Mountain, Inc.*, No. 5:23-CV-01492-SSS-SPX, 2024 WL 2335634, at *5 (C.D. Cal. Mar. 18, 2024) (quoting Cal. Bus. & Prof. Code § 17204).  "Federal courts sitting in California have disagreed . . . about whether competitor plaintiffs must plead their own reliance" to satisfy this requirement under the fraud prong.  *Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-CV-06393-YGR, 2018 WL 659105, at *13 (N.D. Cal. Feb. 1, 2018).  "Most courts have concluded that Plaintiffs must allege their own reliance on the alleged misrepresentations, rather than the reliance of third parties."  *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015).  "However, a growing chorus of federal district courts have held individual reliance is not required for statutory standing where a competitor plaintiff alleges fraudulent competition based on a defendant's misrepresentation if the plaintiff has alleged a sufficient causal connection between the misrepresentation and the plaintiff's

injury." *Faire Wholesale, Inc. v. Tundra, Inc.*, No. 23-CV-02538-JSC, 2023 WL 8586681, at *8 (N.D. Cal. Dec. 8, 2023) (quotation omitted).

Having carefully considered the matter, the Court finds the latter view more persuasive. Applying a personal "reliance requirement to competitor claims makes little sense because false advertising claims between competitors are fundamentally different from false advertising claims brought by consumers." *Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-CV-06703-TSH, 2021 WL 151978, at *12 (N.D. Cal. Jan. 18, 2021); *see also Simpson Strong-Tie Co. v. MiTek Inc.*, No. 20-CV-06957-VKD, 2021 WL 1253803, at *6 (N.D. Cal. Apr. 5, 2021) ("[S]trict adherence to the rule requiring pleading reliance would create an absurd result where a plaintiff could never bring a UCL claim against its competitor for false or misleading advertising.").

Defendant has alleged that Plaintiff's use of the name "Twist & Tangle" in its marketing has misled consumers into thinking that its lower quality products are actually Plaintiff's higher quality products. The Court is not persuaded that Plaintiff was required to allege that it was personally misled by these representations. The Court denies Defendant's motion to dismiss as to Plaintiff's claim under the fraud prong of the California UCL.

## CONCLUSION

For these reasons, the Court grants Defendant's motion to dismiss (Dkt. 80) as to Plaintiff's copyright infringement claim (third cause of action) and grants in part and denies

in part Defendant's motion to dismiss as to Plaintiff's unfair competition claim (fourth cause of action).

      SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     August 9, 2024
           Rochester, New York